NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: STAPLES INC. WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION<br><br>N'Gai George, et al.<br><br><br>Plaintiffs,<br><br>v.<br><br>STAPLES INC.,<br><br>Defendant. | Civ. Action No. 08-5746 (KSH)<br>Civ. Action No. 09-1889 (KSH)<br>Civ. Action No. 09-1890 (KSH)<br>Civ. Action No. 09-1891 (KSH)<br>Civ. Action No. 00-1919 (KSH)<br>Civ. Action No. 09-1970 (KSH)<br>Civ. Action No. 09-1157 (KSH)<br>Civ. Action No. 09-2482 (KSH)<br>Civ. Action No. 09-3983 (KSH)<br>Civ. Action No. 09-4156 (KSH)<br>Civ. Action No. 10-1278 (KSH)<br><br><br><br>OPINION |

**Katharine S. Hayden, U.S.D.J.**

In its order of October 26, 2010 ("October 26 Order," D.E. 131), the Court granted approval of the global settlement of a class action against defendant Staples, but reserved on the issue of attorneys' fees and expenses. This opinion addresses those remaining issues.

The October 26 order adopted the findings of United States Magistrate Judge Patty Shwartz after the fairness hearing that she held and reflected her reservations regarding the submissions of plaintiffs' counsel on attorneys' fees ("fees" or "fees award") and expenses. The order specified:

> [B]ecause D.E. #130 [plaintiffs' counsel's brief in support of settlement approval] omits certain information required in paragraphs (6) through (9) of the Report and Recommendation, plaintiff's counsel shall submit a supplemental filing that (1) specifies the fees incurred after the Stillman judgment was entered; and (2) indicates clearly whether counsel is requesting the Court to ignore the judgment in Stillman as to legal fees and make a new fee award. If a new fee award in place of the Stillman award is sought, counsel shall provide legal authority for overlooking/ignoring/vacating an existing judgment. Any objections to the

1

submissions in D.E. #130 and supplemental submission called for in this Order shall be filed no later than November 3, 2010.

Based on the papers filed in response (D.E. 124), it appears that plaintiffs' counsel requests a fees award of $11.5 million, which is 27.5% of the $42 million settlement fund, along with litigation expenses of $327,552.[1] (D.E. 132 at 8.) Plaintiffs' counsel seeks this award after a judgment for fees and expenses was entered for representation of a sub-group of the class—Staples sales managers—in *Stillman et al v. Staples*. *See Stillman et al. v. Staples* ("*Stillman*"), 07−CV−849−PS (D.N.J.), D.E. 740.

In *Stillman*, 342 plaintiffs—all members of the present settlement class—obtained a successful judgment against Staples following a six-week jury trial. While *Stillman* was ongoing, Staples successfully moved for centralization of the various other related cases as a multidistrict litigation, and, following a lengthy mediation process and settlement discussions, as well as preparation for an upcoming trial, the parties reached the global settlement. (*See* Tr. of Hr'g before Magistrate Judge Patty Shwartz, Sept. 17, 2010 ("Sept. 17 Hr'g"), D.E. 133 at 2:19−3:5.) In the Report and Recommendation ("R & R") (D.E. 128) and an oral decision (D.E. 133), Judge Shwartz identified several deficiencies in plaintiffs' counsel's fees and expenses requests, including the fact that counsel had "omitted" the existing judgment for fees for work done in *Stillman*.

**Background:**

Because this case already has been the subject of extensive litigation and rulings, the Court here will provide only a brief factual and procedural context.

---

[1] In *Stillman*, Judge Shwartz determined that some expenses claimed by class counsel were not recoverable and class counsel appealed that determination. In the present motion, class counsel, who originally sought expenses of $361,373 (D.E. 124), have agreed to lower that request to $327,552 "in the interests of expediting resolution and avoiding the possibility of an appeal," provided that the present motion for attorneys' fees is granted. (D.E. 130 at 2 and 18.)

2

The numerous cases that are the subject of the global settlement involved claims that Staples did not follow laws for overtime payment under the Fair Labor Standards Act ("FLSA") and various state laws for certain employees who held positions with managerial job titles. The cases were filed during or after *Stillman*, in which the plaintiffs obtained a judgment for unpaid overtime in the amount of $4.611 million. (Sept. 17 Hr'g Tr. at 2:23−25.) Pursuant to the FSLA's fee-shifting provision, plaintiffs' counsel in *Stillman* submitted an application for an award of $3.34 million in attorneys' fees and $223,822 in expenses. Judge Shwartz, who presided over the *Stillman* trial, reduced the requested fees to $2.15 million based upon her conclusions concerning the reasonable rate for fees and hours expended by the attorneys and their support staff. (*See* D.E. 130 at 3−4 and 11.) Judge Shwartz also reduced the expenses award to $208,584. (*Id.*) Plaintiffs' counsel appealed that decision to the Third Circuit.[2] (*Id.*)

While *Stillman* was on appeal, the parties reached a $42 million settlement that encompassed three groups of plaintiffs: the *Stillman* plaintiffs; the 11 cases that make up the multi-district litigation and constitute *In re: Staples Inc. Employment Practices Wage & Hour Litigation*, MDL 2025; and a non-removable state court case, *Yacouby v. Staples, Inc., 08-1302* (Super. Ct. Mass.). (*See* D.E. 124 at 2−3.)

In recommending that fees be declined based on the existing submissions, Judge Shwartz expressed concern that counsel made no attempt to harmonize the fee award that had been reduced to judgment and was on appeal, and the fee award set forth in the global settlement. She noted that although plaintiffs' counsel's fees application sought to apply "an hourly rate that was not accepted and applied by this Court when rendering the *Stillman* judgment," counsel had provided "nothing in [the submissions] or at the argument during the Fairness Hearing that

---

[2] On the parties' joint motion, the Third Circuit dismissed the appeal and remanded the action to this Court. *Stillman, et al. v. Staples, Inc.,* No. 09-4072, D.N.J. No. 2-07-cv-00849 (3d Cir. Sep. 7, 2011).

3

provided any authority for the Court to ignore the [*Stillman*] judgment. . . ." (*Id.* at 68:7−11 and 71:12−13.) Judge Shwartz also observed that settlement money paid to individual class members "could be greater if the fee award is less" (*Id.* at 52:24-25), and concluded that the "deficiencies of the submission" by plaintiffs' counsel would render this Court "unable to determine whether or not the fee request award of 27.5 percent . . . is reasonable" (*Id.* at 70:10-15). The submissions lacked sufficient information for the Court to apply the suggested lodestar cross-check if it chose the percentage of recovery method and failed to specify what portion of the requested fees represented *Stillman* time and therefore was subject to Judge Shwartz's findings in *Stillman*. (*Id.* at 69:4-5 and 71:10-11.)

Plaintiffs' counsel has now submitted a chart of federal and state court common fund settlements in FSLA cases in which attorneys' fees were awarded as a percentage of recovery, as well as certifications setting forth the hours of non-*Stillman* work, the expenses related to non-*Stillman* work, fees incurred after entry of the *Stillman* judgment, legal authority for making the new fee award request. (*see* D.E. 130, 132, 135.) It is on this record that the Court examines the reasonableness of the requested fee award.

**Discussion:**

In her oral opinion on the Fairness Hearing R & R Judge Shwartz set forth the legal standards that govern fee applications in the Third Circuit and thoroughly explained both the lodestar method and percentage of fee method. (Sept. 17 Hr'g, D.E. 133 at 57:19-67:25.) As the Court has adopted Judge Shwartz's findings, the discussion of relevant legal standards is hereby incorporated into this opinion.

The Court will apply the percentage of recovery method for awarding attorneys' fees, which is favored in common fund cases because it "allows courts to award fees from the fund "in a manner that rewards counsel for success and penalizes for failure." *In re Prudential Ins. Co. of*

4

*Am. Sales Practice Litig., II,* 148 F.3d 283, 333 (3d Cir. 1998) ("In re Prudential II"). That leads to the question of whether the actual amount requested is reasonable and fair. Under the percentage of recovery method, a court calculates an "appropriate percentage of [a common fund] to award attorney fees based on a series of reasonableness factors." *In re Diet Drugs Product Liability Litig.*, 582 F.3d 524, n.24 (3d Cir. 2009); *In re Prudential,* 148 F.3d at 336–40. The Third Circuit identified these "reasonableness" factors in *Gunter v. Ridgewood Energy Corp.* as including the:

> (1) size of the fund created and the number of persons benefitted;
> (2) presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> (3) skill and efficiency of the attorneys involved;
> (4) complexity and duration of the litigation;
> (5) risk of nonpayment;
> (6) amount of time devoted to the case by plaintiffs' counsel, and;
> (7) awards in similar cases.

223 F.3d 190, 195 n.1 (3d Cir. 2000) (citing *In re Prudential*, 148 F.3d at 336–40).

Another factor to consider is "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations." *In re AT & T Corp. Securities Litig.*, 455 F.3d 160, 165–66 (3d Cir. 2006)(internal citations omitted). These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195, n.1. What is crucial is for "the district court to evaluate what class counsel actually did and how it benefitted the class." *In re AT & T Corp.*, 455 F.3d at 165–66 (internal quotation omitted). The Third Circuit also advises district courts to cross-check the percentage of recovery award against the lodestar method. *Id.*

In her oral opinion, Judge Shwartz identified the relevant *Gunter* factors, but could not apply them because of the deficiencies in counsels' submissions. (Sept. 17 Hr'g, D.E. 133 at

57:19-67:25.)  Now that the record has been supplemented with the necessary additional information, the Court applies the *Gunther* factors.

The first factor addresses the size of the fund and the number of persons benefited.  The fund created by the settlement is $42 million, the class consists of approximately 5,500 individuals, and each class member will receive an average of at least $5,000, with individual payments "proportional to the amount of time worked within the statute of limitations."  (Sept. 17 Hr'g Tr. at 53:20−23.)  Judge Shwartz found that the settlement, while not providing complete compensation, was "more than reasonable." (*Id.* at 54:5−13.)  The Court is convinced that the amount of both the settlement fund and the average individual payment are substantial, and that plaintiffs' counsel has achieved a significant result for a sizeable group.  Accordingly, the Court finds that the first *Gunter* factor weighs considerably in favor of approving the fee award.

The absence of any significant objection to the settlement also provides strong support for the fee request.  At the time of the R & R, Judge Shwartz noted that 3,253 of 5,509 class members had filed claim forms and, in addition, nearly all *Stillman* plaintiffs had cashed their checks, despite the fact that they were getting a lower recovery under the settlement. (Sept. 17 Hr'g Tr. at 41:9-15).  Class members received notice of all the settlement terms, including attorneys' fees and expense applications (D.E. 130 at 2), and not a single member objected to the fees or expenses requests.[3]  The absence of any objection to the settlement or to the fees and expenses requests suggests the award sought by plaintiffs' counsel is reasonable and fair, and thus the second *Gunter* factor favors approval of the award.  *See In re Rite Aid Corp. Securities Litig.* ("*In re Rite Aid*"), 396 F.3d 294, 304 (3d Cir. 2005)(holding that a district court "did not

---

[3] With a class of more than 5,000 people, only four class members requested exclusion from the settlement and no class member objected.  The only objection raised was by the Attorney General of Texas, and that objection was to the settlement's terms, not to the fee request.  Judge Shwartz noted that that objection did not warrant rejecting the settlement, and no one has objected to her findings. (Sept. 17 Hr'g Tr. at 41:3−7; D.E. 124 at 25.)

abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request").

Furthermore, as Judge Shwartz noted, the plaintiffs' attorneys here are experienced and skilled, and they faced similarly skilled and experienced defense counsel. Class counsel also expended a significant amount of time—well over 14,000 hours as of August 2010—in prosecuting the *Stillman* case, the MDL cases and the Massachusetts state case. (Decl. of Seth R. Lesser in Supp. of Mot. for Final Approval ("Lesser Decl. 2"), D.E. 124, attach. 3 at ¶ 32; D.E. 124 at 26.) This time was expended on a contingency basis, and with the risk that plaintiffs' counsel might not be compensated. (D.E. 124 at 27.) The case has lasted for several years. It involved extensive litigation, including discovery, pre-trial, trial and post-trial phases and, as counsel convincingly represents, "has been complex [and] involved multiple novel issues." (D.E. 124 at 26.) According to counsel, *Stillman* was the "second FLSA misclassification ever tried to a jury" and "the first such case in the Third Circuit." (*Id*.) Extensive preparations for an additional trial continued up through the time of negotiating the settlement agreement. (*Id.*) Accordingly, the third, fourth, fifth and sixth *Gunter* factors argue in favor of approving the fee award.

Finally, the 27.5 percent of the fund requested here does not appear disproportionate compared to other percentage of recovery fee awards. *See G.M. Trucks*, 55 F.3d at 822)(noting that fee awards range between 19 and 45 percent of the settlement fund). At the Court's request, plaintiffs' counsel submitted information on fee awards in similar cases in the Third Circuit. In one case cited by defendants, *Lenahan v. Sears*, which involved a $15 million FLSA common fund settlement, the court approved a 30 percent fee award, noting that "attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment class actions." 2006 U.S. Dist. LEXIS 60307, at *65−6 (D.N.J. Jul 10, 2006).

Plaintiffs' counsel also points to other settlements where courts in the Third Circuit have approved fee awards of 30 percent in FLSA settlements (D.E. 130 at 8) and represents that the fees requested here also are in line with FLSA wage and hour settlements in cases in other circuits where fee percentages have ranged from 21 to 43.9 percent, including a 38 percent fee award in a $54 million settlement *Braun v. Wal-Mart, Inc.*, No. 19-CO-01-9790, 2009 WL 1592532 (Minn. Dist. Crt. June 1, 2009), and a 38.3 percent fee award in a $90 million settlement. *Hale v. Wal-Mart Stores, Inc.*, No.1 01-CV-218710, 2009 WL 2206963 (Mo. Cir. Ct. May 15, 2009).

The lodestar cross-check, used in the Third Circuit as an additional tool for assessing the reasonableness of a percentage of recovery award, also supports the requested fees award. The lodestar cross-check entails "neither mathematical precision nor bean-counting," and the court "need not review actual billing records," but rather may rely on summaries submitted by attorneys. *In re Rite Aid,* 396 F.3d at 306−07 (citing *In re Prudential,* 148 F.3d at 342). The multiplier "accounts for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Id.* at 305−06. Lodestar multipliers are "by nature. . . discretionary and not susceptible to objective calculation." *In re Prudential,* 148 F.3d at 340. The Third Circuit has held that multipliers of one to four are "frequently awarded in common fund cases when the lodestar method is applied." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 341−2 (D.N.J. 2002)(citation omitted).

Here, the total lodestar as originally calculated by counsel is $6.386 million and the requested fee is $11.5 million, yielding a positive multiplier of 1.8. (*See* Lesser Decl. 1 at 7 ¶ 13.) This Court, however, is bound by the law of the case as related to the *Stillman* fees and expenses award and adopts and applies the blended hourly rates set forth in *Stillman* to the non-*Stillman* work, which would result in a total lodestar of $4,187,612.33. (*Id.* at ¶ 18.) The

8

adjusted aggregate lodestar cross-check for the $11.5 million award yields a multiplier of 2.75. (*Id.* at ¶ 19.) Under either calculation, the multiplier falls within the 1 to 4 range accepted in the Third Circuit.

The Court therefore finds both that it is appropriate to award a fee based on a percentage of the recovery obtained for the class and that the requested fee award of 27.5 percent of the common fund is reasonable. Plaintiffs' counsel are experienced and skilled attorneys, they undertook extensive work on a contingency basis at the risk of non-payment throughout numerous stages of litigation—including the *Stillman* trial itself—and faced vigorous opposition at all stages by seasoned defense counsel. Had class counsel pursued further trials (with the attendant risk of an adverse result) they would have amassed significant fees resulting in additional lodestar. Moreover, class certification law is constantly in flux, and recent developments in the law may have inhibited plaintiffs' ability to proceed as a class. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (Jun. 20, 2011). A global settlement with certainty and finality has immeasurable benefits for class members. In this case, counsel reached a settlement that encompassed multiple categories of plaintiffs and resolved numerous federal and state law claims with varying proof requirements, to the benefit of approximately 5,500 people. As noted above, the *Gunter* factors all weigh in favor of the requested fee, and the lodestar cross-check yields a multiplier that supports the award as reasonable and fair to the class. Additionally, the lowered expenses award of $327,552 requested by counsel (D.E. 130 at 17−18) in light of the reservations expressed by Judge Shwartz are also reasonable.

Having concluded that the fee award is reasonable, the Court is left with the existence of the *Stillman* judgment, which counsel admits is a final binding judgment pertaining to the appropriate fee award for *Stillman* work. (D.E. 135 at 2, 4.) The global settlement was extrapolated from the success of *Stillman* and includes many more plaintiffs, "some of whom are

represented by attorneys who were not involved in *Stillman*, and the claims of a number of the *Stillman* plaintiffs themselves who continued to work at Staples after the time the *Stillman* judgment was entered." (D.E. 135 at 3.) The parties have represented that they are prepared to file a joint stipulation agreeing that approval of this global settlement fees and expenses award satisfies the *Stillman* judgment in full. (*Id.* at 6.) Therefore, there is no reason for this Court to disturb the *Stillman* judgment, and the efficiency and finality of this resolution favors deeming that judgment satisfied on the joint stipulation of the parties. As counsel notes "there is nothing inconsistent between the prior judgment and a new/fee expense award because, by virtue of the parties' agreement, the latter will satisfy the former." (*Id.* at 2.) Accordingly, plaintiffs' counsel's motion for a fee award of $11.5 million (D.E. 124) and for expenses of $327,552 (D.E. 132) is **granted**, and an appropriate order will be entered.

November 4th, 2011

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.